OPINION
At about 6:30 a.m. on January 26, 2001, defendant, Rickey L. Crawley, was seen smashing the glass door of a market located at East Main Street and Wilson Avenue. He then entered the store and stole cigarettes, cigars, cash, and a handgun, and then fled the scene in a car driven by an unidentified accomplice. On February 5, 2001, defendant was indicted for one count of aggravated burglary, one count of theft, and one count of having a weapon while under disability. After a trial by jury, defendant was convicted of aggravated burglary, and the remaining counts of the indictment were dismissed. Defendant now appeals his conviction raising the following two assignments of error:
 [1.] The trial court erred because the verdict is against the manifest weight of the evidence in accordance with the Due Process and Equal Protection provisions of the United States and the Ohio Constitutions.
 [2.] The trial court erred because the verdict is not supported by sufficient probative evidence in accordance with the Due Process and Equal Protection provisions of the United States and the Ohio Constitutions.
The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. Sufficiency is a term of art used to describe that evidence which, as a matter of law, is legally sufficient to support a conviction. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. Sufficiency is synonymous with adequacy. When reviewing a conviction challenged on the basis of insufficient evidence, the evidence must be construed in a light most favorable to the prosecution, and the reviewing court must determine whether any rational trier of fact could have found each of the essential elements of the crime proven beyond a reasonable doubt. State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387, unreported.
Conversely, when reviewing a verdict challenged to be against the manifest weight of the evidence, we must examine the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence the trier of fact clearly lost its way and, further, created such a manifest miscarriage of justice that the judgment or conviction must be reversed. As set forth in Thompkins, supra, the "manifest weight" of the evidence is:
 * * * "[T]he inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." [Emphasis sic.] [Id. at 387, citing Blacks Law Dictionary (6 Ed. 1990) 1594.]
The dispositive issue on appeal is whether the evidence properly supports the defendant's identification as the perpetrator of this crime. Upon a thorough and careful review of the record, we find that it does.
The first witness called by the prosecution was Officer John Edwards. Officer Edwards testified that he was assigned to the twelfth precinct on the east side of Columbus and responded to the crime scene at about 7:00 a.m. Upon arrival, he relieved officers who had initially responded from an adjacent precinct and began his surveillance of the crime scene. While he was at the scene, the owner of the market arrived, Abdul Alchahal, and he took a report noting the damage to the front door, the missing cigarettes and cigars, and the missing cash and handgun.
Officer Edwards also interviewed three eyewitnesses who approached him while he was at the market. Those individuals were Wendy Myers, Tamra Roth, and Shaun Jones. After speaking with all three, Officer Edwards transported Mr. Jones downtown where he gave a written statement to Detective Kenneth Huck. Detective Huck then produced a photographic lineup from which Mr. Jones positively identified the defendant as the perpetrator. Thereafter, Officer Edwards individually displayed the lineup to Ms. Myers and Ms. Roth and asked each to make an identification. Both witnesses identified the defendant without hesitation.
The second witness called to testify was Mr. Alchahal, who explained that he frequently spends the night at the store and, when he is unable to do so, his employee Curtis Lazier stays in his place. Mr. Alchahal stated that he did not spend the night at the store on January 26, 2001, but that Mr. Lazier did.
The third witness was Mr. Lazier, who verified that he was sleeping in the basement of the market when the break-in occurred, although he did not see it occur.
The fourth witness called by the prosecution was Ms. Myers. Ms. Myers testified that she was familiar with the market and surrounding area and knew the defendant by sight and name. That morning, she was riding as a passenger in a car that had stopped at a red light on the same side of the street as the market. When she looked toward the market:
 A. * * * [T]here was four people standing around at the carry-out. It was two guys and two girls. Only thing I saw, I was sitting at the red light, we was going through the red light, like what I saw was Ricky [the defendant] had a brick in his hand * * * .
* * *
Q. Did you see the brick go through the window?
A. * * * No, I saw him at the window. * * *
* * *
Q. Are you sure it was Ricky Crawley with the brick?
 A. Yes, sir, I'm sure it was Ricky with the brick. [Tr. 78-82.]
Ms. Myers concluded her testimony by verifying that she selected the defendant's photograph from the photographic lineup shown to her by Officer Edwards.
Detective Huck was the next individual to testify. While on the witness stand, Detective Huck verified that he interviewed Shaun Jones at the request of Officer Edwards. He also explained the standard procedure used to produce the photographic lineup shown to each of the three eyewitnesses.
The last witness called was Shaun Jones. Mr. Jones explained that he left his home a few blocks away and walked toward the market to buy cigarettes at about 6:40 a.m. When he came into sight of the market, he observed a man parked on the corner of Main and Wilson. He then watched the defendant pick up a brick and throw it through the glass of the front door. The defendant and an accomplice then entered the market and started taking items out to the waiting car. Mr. Jones testified:
Q. Did you see the defendant there?
A. Yes, I did.
Q. Do you know Ricky Crawley?
A. Yes, I do.
* * *
Q. And what did you see him doing?
 A. I seen him with another man, and I seen him pick up a brick, and I seen him throw it through the window.
Q. You saw the defendant do that?
A. Yes.
Q. Which window would this have been?
 A. It would have been the window that enters into the front door of the store.
Q. The front door has a big window in it?
A. Yes. It was a big window in the middle of the door.
Q. * * * What did you do see him do next?
 A. Him and another guy ran into the store and began taking things out and putting the things in his car. * * *
* * *
 Q. Did you have any doubt in your mind it was Ricky Crawley that went through the door that went into the store?
A. No, I don't.
Q. No doubt?
A. No.
Q. No doubt?
A. No doubt. [Tr. 8-10.]
Mr. Jones testified definitively that the defendant was the person who broke into the market and removed merchandise. He knew the defendant by sight and name and saw the defendant pick up a brick, throw it through the window, and make several trips carrying merchandise from the store to the waiting car. Ms. Myers also knew the defendant and identified him as the individual she saw pick up a brick and approach the door of the market shortly before the burglary. Finally, Mr. Alchahal and Mr. Lazier both testified that the market was an occupied structure.
From this evidence, a rational trier of fact could have found each of the essential elements of aggravated burglary proven beyond a reasonable doubt. Accordingly, we are unable to find, construing the evidence in a light most favorable to the prosecution, that the defendant's conviction is not supported by sufficient evidence. We are also unable to find that the trier of fact clearly lost its way when it evaluated the credibility of the testimony, creating such a manifest miscarriage of justice that defendant's conviction must be overturned. Even assuming there had been evidence or testimony presented that the defendant was not the individual responsible, a conviction is not against the manifest weight of the evidence merely because the trier of fact may have heard inconsistent testimony. State v. McVay (Sept. 30, 1999), Franklin App. No. 98AP-1246, unreported, discretionary appeal not allowed (2000),87 Ohio St.3d 1492. Accordingly, both of defendant's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BRYANT and PAINTER, JJ., concur.
PAINTER, J., of the First Appellate District, sitting by assignment in the Tenth Appellate District.